The first argument that we'll hear is Keil v. The City of New York and Cain v. de Blasio, I guess it would be now Adams. Let me make sure Council are here for the appellants. Mr. Black. Good morning, Your Honor. Okay, and with you is Miss Gibson. Yeah, I think you're on mute but that's okay I see you. And Miss Paulson for the appellee. Morning, Your Honor. All right. So as I understand it, Mr. Black and Miss Gibson are splitting their argument, five minutes a piece with no rebuttal, correct. Yes, Your Honor. We would respectfully request to reserve two of our five minutes for rebuttal, if the court would grant that. I think it might actually be useful. So, so then you'll do four and four and four, we'll hear from Miss Paulson for 10 and then you'll come back for one and one is that what you think. That would be fair, Your Honor. Or is just one person going to do the rebuttal for everybody. I think we would like to each reserve a minute if that's possible, Your Honor. All right, let's do it. It's a motion but interesting issues. So okay so Mr black you've got the floor for four minutes, but it's not fast, but not too fast. Thank you, Your Honor and good morning, may it please the court. This court's November 28 decision and order held that the vaccine mandate as applied via the accommodation standards of the arbitrators award was neither neutral nor generally applicable. Notably this court held that, and I quote plaintiffs have offered evidence that the arbitrators reviewing their requests for religious accommodations had substantial discretion over whether to grant those requests, and quote, this court also concluded that because the city asserted that it will afford substantially the same relief to non parties. Broader relief was not warranted. The court then remanded the matter to the district court for fresh consideration by a citywide panel, noting that it's holding was narrow and that quote plaintiffs are free to renew their First Amendment and other objections before the district court. Now that the review has been completed. Appellee's conduct under the citywide panel review process has proven to be as much a constitutional disaster as the prior accommodation standards. Let me let me ask you that. So, I mean, one of the things that judge Caproni said was that, basically, you haven't put in anything about this new citywide panel process. And so, I mean, she basically said that this. I mean you haven't shown a likelihood of success on the merits because you've got almost no information about the process before the court. And so, what was before the court that would allow her to assess your claim about the citywide panel. Your Honor, unfortunately, what resulted from the citywide panel was summary denials of 14 of the 15 plaintiffs, which were supposed to be given fresh consideration of their applications, no reason given. And days later after we brought it to the court's attention, counsel for appellants, appellees submitted their own purported reasons for those denials. So we put before the court, whatever we had. Sorry to interrupt but those were not before the district court right the reasons I mean I know they're part of the appellate record but they weren't before the district court. I believe they were subsequently provided to the district court. Well the district court in its ruling, talked about that written decisions from the panel would be forthcoming, and will be provided promptly to plaintiffs counsel once received but that was, that was at the time of the order so it would seem strange to have them makes the point that there were no reasons given. It was only Monday morning quarterbacking that yielded those additional purported reasons. So they were summarily denied with no reasons, and we argue that that is further evidence of the fact that this, what should have been what was ordered to have been a fresh consideration under constitutional standards, turned out to be a sham and a rubber stamping, what they already wanted to do anyhow, and the fact that I'm sorry but it seems to me that what you're saying is that it's a sham and a rubber stamp because they denied the request. But there's got to be more than that. Right. You've got to be absolutely, you've got to be able to establish more than that but they denied your request, ergo, it's a sham. Oh, absolutely, Your Honor, and the reason it's sham and the reason it's as unconstitutional as what this court already ruled was unconstitutional the first time around is because is for the following reasons. This court in its ruling held that where there is substantial discretion over whether to grant requests, you're subject to strict scrutiny. Well, that's exactly what this city wide panel is and was and turned out to be. But, I mean, that was pretty clear even at the time that the Merits panel in November issued its ruling, right? The Merits panel directed the city to consider both Title VII, New York State, and New York City's laws in reviewing and grant in giving this fresh consideration to the religious exemption applications. Right, but you don't agree with that, right? You don't think Title VII has anything that doesn't belong here. Your view is that this is a state actor, it's not Union Carbide, this is New York City, the Department of Education, and therefore, the analysis ought to be a strict scrutiny one, not a Title VII undue burden one. Isn't that what your argument? We do believe that, Your Honor, but this... But that's not what the panel said in November of last year. None of that many words, Your Honor, but in sending it back for fresh consideration, the Second Circuit Merits panel did not direct the city to employ unconstitutional standards. They could have. But they did sort of at least seem to say that Title VII had a place in this process. Yes, but Your Honor, Title VII, as we've argued before, was designed to supplement, not supplant, the First Amendment. So you can and must, Title VII exists for a state actor, as well as for a private actor, but in implementing the standards of Title VII, a state actor is held to a higher standard to strict scrutiny. You can still make determinations under Title VII, under New York City and state's human rights laws, while still following the constitutional requirement that a state actor act under strict scrutiny standards. Right, right, but the order didn't say to apply strict scrutiny, did it? It didn't say one way or the other, Your Honor, but it did say that it was unconstitutional when you're engaging in substantial discretion. And that's exactly what this panel did, what the citywide panel did. Your Honor, if I may, I'd like to point out that what should have been fresh consideration, we would have argued is, well, throw away everything you did before. Tell your applicants, submit new applications, and let's do it the way the Second Circuit ordered us to do it. Fresh consideration. They said, you don't need to give us anything new unless you want to supplement what you already gave us before. So they used the same documents, the same submissions that had already been obtained under decidedly unconstitutional standards. That's what they reviewed. That's why we argue it's nothing but a rubber stamp in a sham. They didn't give it a fresh consideration. Let me stop you there, Mr. Black, just because we are going over. But I want to see if Judge Kearse or Judge Walker have any questions for Mr. Black. Oh, thank you. All right, so let's now hear from Ms. Gibson. I think you're still on mute. I'm sorry. Good morning. May it please the court. Sujata Gibson appearing for the Kane plaintiffs. Your Honor, this is a question of who has the burden of proving at this stage of the proceedings whether there's been discrimination. So we've already established through a motions panel and then a merits panel that there was gross discrimination against our clients and thousands of others through a facially unconstitutional religious exemption policy, which on its face requires discrimination against minority religious viewpoints. This same November panel held. They didn't say that it was facially unconstitutional. They said it was as applied unconstitutional. Right. Or at least you had a likelihood of success as applied. Right. Well, I would I would push back on that, Your Honor, because what they did say is that the religious exemption policy was on its face unconstitutional. The vaccine mandate might not have been considered. I think you're confusing unconstitutional with general and generally applicable and neutral. So, Your Honor, I don't believe so. The policy on its face said that you have to discriminate against people with minority religious views. It wasn't like random arbitrators or random people happen to adopt this standard. The policy itself in a written form said you have to discriminate. And so so so then we have Corporation Council representing the Department of Education over and over again, finding that people should arguing zealously that people should be. But let me just stop you again, because I really don't like people being slick with the record, because this is what the panel said at this juncture. They, the appellants, have demonstrated a likelihood of success on their as applied challenge to the proceedings used in assessing their accommodation requests. Yes, Your Honor. Where's the facial? Where's the face? Yes, because the panel of the merits panel also went through and said that these standards are themselves unconstitutional. This policy, as written, is unconstitutional. So what they're saying is that the vaccine mandate itself is not facially unconstitutional, but as applied through the religious exemption policy, which was also adopted by the D.O.E. This wasn't this was an official policy that on its face was unconstitutional. You can call it as applied, you know, applying the the vaccine mandate. But the policy itself was unconstitutional, even regardless of the vaccine mandate. The religious exemption policy itself was unconstitutional. So that's what they mean when they said as applied the vaccine mandate as applied. But the religious exemption policy is facially unconstitutional. I don't think there's any doubt about that. Everybody agrees that as written, it's unconstitutional. As written, what do you mean? The religious exemption policy required that people whose beliefs conflicted with the dogma of an official orthodoxy be denied, that people who didn't have a clergy letter be denied, that people who had personally held religious beliefs be denied. But I'm talking about I'm sorry, I'm talking about now. What is the policy now? What is the written policy? So the written policy has suspended thousands of people, including these 14, 15 appellants. So they all were suspended under what I don't think you can call anything else than a facially unconstitutional religious exemption policy. After that point, the burden now shifts to the Department of Education to show that they have some non-discriminatory reason for upholding these suspensions, which have already occurred under the unconstitutional policy. Rather than meet that burden, they gave summary denial saying does not meet criteria to every single applicant, including the one applicant that they accepted. They didn't articulate any reasons. When we did apply to renew the preliminary injunction motion, they didn't even give reasons at that point. They said they're going to be coming later, but they had never said that in the first instance. When they issued their denials, they said right on the denials, this is the final decision. There was no hint that there was going to be additional materials. But when the additional materials came, they too were unconstitutional. So who bears the burden once discrimination has been established? Is it the people that have already established the discrimination? Or is it the DOE? And I would submit, Your Honors, that what the Second Circuit did is essentially give the DOE a second chance to articulate, to rebut the discrimination claims, to offer some evidence that there was some real reason to be able to exclude these employees. And they haven't done that. They haven't met that burden. Can I ask you a question, Counselor? This is Judge Walker. What exactly would you like us to do with this motion right now? Go ahead. I believe it's time to reinstate these employees that have all proven that they were suspended under a facially discriminatory policy. What is their status right now? They're suspended without pay? Yes, Your Honor. Some of them have now lost their homes. They are in desperate situations and daily coerced into violating their deeply held religious beliefs, with no showing by the appellees that this is the least restrictive means of achieving their goals or that it's necessary to do so. And you adopt your other counsel's view that because dealing with the applications is a matter of discretion, therefore strict scrutiny applies. It has to. We're talking about decisions by government actors about what religious beliefs are valid and religious in nature. I mean, this is a straight Cantwell v. Connecticut case. When are the merits scheduled to be heard? We don't have them scheduled yet, Your Honor. Would you like an emergency? Would you like an expedited hearing on that? We would. But at this point, Your Honor, I think we've already been through a merits panel and found likelihood of success. I think at this point, it's time to finally grant these employees some relief. I mean, especially with this is a motion now. Right. A preliminary injunction motion. So, this is not, it's not, we aren't alighted with the merits right now, are we? This is just a motion to decide whether we should preserve the status quo, not preserve the status quo pending the full hearing. And you would like to alter the status quo by lifting these suspensions. Your Honor, I would not, I would not say that's altering the status quo because they applied on October 4th, the same day they were suspended. And many of them actually weren't even suspended until several weeks later. So, they all applied before this occurred. If we were just the status quo right now, I'm not, I'm not quarreling with you and I'm not, these are not hostile questions. Right now that you're saying that they're suspended without pay and that's intolerable to you. So, that's the status quo and you don't want that to continue. Absolutely, Your Honor. Respectfully, I think that should have happened in the first instance. I think the DOE was given a chance to rebut these claims of discrimination or, you know, remedy the situation and they didn't do it. So, getting back to my other earlier question about timing. If there's going to be a full, a full presentation to a merits panel, then, and, you know, with full briefing and all the rest, wouldn't that be something that you would want and do it, do it as quickly as possible? Not if it would delay relief, but yes, of course, we would want to, we would want to speed things along as quickly as possible, but these people need relief. If we were to give relief, the relief you want, presumably the city would, would be asking for an expedited appeal. And you would have no objection to that either. I mean, we're talking about an appeal that would take place within 20 days or something like that. No objection to that, Your Honor, of course. But we do desperately, you know, plead with the court to, it finally issues some relief. These people have been waiting beyond, beyond what can be reasonable. They are desperate at this point. And, and I want to point out that daily coercion of stripping them of their jobs and livelihoods, unless they're willing to violate their faith after this court has already found they're likely to succeed. That is a fresh harm every single day. It is getting desperate. There are many of the class who have succumbed and wept as they got vaccinated. Let's just stay focused on the law for now. And the fact is that you made this motion to Judge Caproni as a, as a two page letter motion, letter brief, right? We renewed our preliminary injunction motion. I believe that one of the things... You renewed it from when? From October 4th when we first made it. You renewed the motion that was briefed before the November 28th ruling of the circuit. Yes, Your Honor. We have a whole new system in place, which is the citywide panel system. And rather than make submissions about what that process consists of and what it looks like and how it works, you just filed a page and a half letter brief. And that's, I mean, I think Judge Caproni could be excused for being frustrated at your failure to explain the process. I mean, seeking an injunction that is your burden, isn't it? To prove likelihood of success on the merits. We've already proven likelihood of success, Your Honor. The burden is to show that we're not likely anymore because this process somehow fixes it. But the reality is we submitted all the facts we had. This process was a sham. It was run by Apelli's own lawyers who have a decided interest in ensuring that they find that the suspensions were valid, even though they were under a facially unconstitutional policy. I mean, we'll hear from the city in a minute, but it does seem that the city was complying with the motions panel order that was ultimately endorsed by the merits panel in November, which is adhere to the standards established by Title VII and set up a citywide panel as opposed to the arbitration panel. Well, it was run by the attorneys for Apelli's. Those were the decision makers. And we are submitting that it doesn't comply with Title VII, New York State human rights law or New York City human rights law in that it doesn't articulate valid standards for why it would be an undue hardship to accommodate people or why personally held religious beliefs should not be accepted, which is what they did. Let me ask you there because it's not clear to me at all why this is Title VII standard would apply here at all, according to you, right? I think they both apply. You're asking for strict scrutiny, right? Strict scrutiny of the Title VII accommodation decision, yes. I'm not sure what that means. Title VII has a different standard than strict scrutiny, right? If you're going to engage in individualized determinations about whether somebody's faith is valid and sincere and what accommodations you can make for that person's religious faith, and you're a government actor, you have to be held to strict scrutiny because you're making individualized, non-neutral determinations. So they both apply. It's not a substitute. What is the role of undue hardship in this process? It would really be the least restrictive means. That's the difference is undue hardship versus least restrictive means analysis. So that Title VII and the human rights laws, they all have the same First Amendment standard in terms of determining religious sincerity and whether a religious belief is valid. But then the question is how much needs to be accommodated. And so under strict scrutiny, you would have to show that it's the least restrictive. I understand the difference. It seems, however, that the panel in November endorsed the motions panel view that Title VII ought to be the standard. So, I mean, isn't your beef really with that? I don't think that the approach was correct, with all due respect. I do think it's reasonable to try to give the DOE a chance to rebut the discrimination claims and remedy them. But I do think at this point that we don't lose strict scrutiny just because they've engaged in another individualized review of the religious exemption applications. I think that any time the law is pretty clear that if any time a government actor engages in individualized determinations about whose religion is valid, you've got to be subjected to strict scrutiny still. I know you're arguing that. And I think that makes sense. But it seems to me that the motions panel that decided to grant interim relief back in October, I guess it was, I don't have the date in front of me. They're the ones who talked about that the panel would have to adhere to the standards established by Title VII. That's an undue hardship standard. And that's the language then that shows up, at least what the city produced later, indicating why these requests were denied. They all just fell back to undue hardship. Isn't your view that undue hardship is not the right standard? Yes, Your Honor, but also even New York State human rights law and New York City human rights law doesn't have the same de minimis undue hardship standard as the Title VII reviews. Under both of those human rights law statutes, you have to actually meet a much higher burden that's in line with the ADA and is more of a significant expense. And because they're regarding these people as infected with COVID, though they're not, you would also have to meet a direct threat analysis showing that they are a significant risk of substantial harm to others around them. So they really can't do it. At this point, they're letting infected teachers, they're forcing infected teachers to come back and teach in the classroom after five days when they're still infected. But they're not allowing unvaccinated teachers who are testing negative to come teach in the classrooms. Plus, they have a remote option with tens of thousands of students who are currently studying remote who are not coming to school. They could accommodate them that way. There's a variety of ways they have to show that they at least tried. They haven't done that. Okay. All right. So I think we're way over. But let me just see if my colleagues have any other questions. Hearing none, let's now hear from the city on some of the points. That's Ms. Paulson. Thank you, Your Honor. First, may it please the court. Susan Paulson on behalf of the City of Appalachia. Your Honor, the District Court providently exercises discretion in the plaintiff's request for sweeping injunctive relief. As you noted, they filed a one and a half page letter citing those case law and presenting few facts about the process before the citywide panel. Nonetheless, they're asking to enjoin the government action taken in the public interest. But not only is the record too sparse to show a likelihood of success on the merits of their claims, their legal arguments are wholly misplaced. Although they don't repeat them today before the court, in their motion papers, they argue that the vaccine requirement itself is unconstitutional, ignoring that this was already ruled on after full briefing by a merits panel of this court. Let's not go there. Let's just stay focused on the issues for the exemptions. Absolutely. One of the things that Judge Caproni did is that she focused. She basically said that this was generally applicable and neutral and therefore subject to rational basis. And I don't see how you can get there. Yes, Your Honor. I'll explain. Let me just finish. I mean, it seems to me that this is the same argument as before, which is that this is a process that is flawed and singles out religious people and subjects them to this highly discretionary idiosyncratic process of getting or having denied religious exemptions. Why isn't that strict scrutiny? Your Honor, it's not strict scrutiny. The process that was established by the independent arbitrator established criteria that this court found were likely constitutionally infirm. And not only were the stated criteria likely constitutionally infirm, but the record before the court on those procedures contained the affidavits of the plaintiffs as to how the arbitration process played out and how the arbitrator exercised discretion in determining their appeals. In contrast to that, the stated criteria here, as Your Honors have recognized and endorsed by the Marist Penalist Court, are the standards of Title VII in the city and state human rights law, not the standards articulated in the arbitration awards that were constitutionally suspect. But not only are the standards on their face neutral and generally applicable. But there's no information in this record that the different actors, no longer the independent arbitrators, but the citywide panel, which is not run by the appellees, which is comprised of a representative of the City Commission on Human Rights, the Department of the entire municipal workforce, they established the citywide panel to review accommodation requests from the entire workforce. And when we were before this court, we were able to make that panel process available to these plaintiffs because of the constitutionally suspect criteria, the independent arbitrate award. So there's no information in the record. Not only are the criteria established on their face neutral, but there's no information in the record that they were applied in a discretionary manner in contrast to the record that existed on the manner in which the arbitrators were applying the appeal standards. What about your adversary's argument about the fact that a letter from the priest or some sort of official letter from the religions, whoever was in charge of that particular religious unit that the person belonged to was required in order to grant the exemption? That seems problematic. Your Honor, that was a requirement in the standard set by the independent label arbitrator. That is not a requirement for application to the citywide panel. That is correct, Your Honor. And the plaintiffs were invited to submit any materials they wish to have the panel review. They were not required to resubmit their existing applications. They all uploaded their existing applications and then supplemented those in response to the panel's questions. But the applications did not require a clergy letter and did not adhere to the standards that were created by the independent labor arbitrator. Is there any sort of a finding by the citywide panel when a person comes in claiming a religious exemption and says I have a sincerely held belief that these vaccines are stem cell vaccines that come from aborted fetuses, et cetera, et cetera. My religion won't permit me to be vaccinated under those circumstances. At least my own belief, my own belief, my relationship with the divine does not permit me to do this. How is that measured and can it be second guessed? Well, two points. First, I would note that not a single one of the plaintiffs was accommodation request was denied solely on the basis of a finding they didn't have a sincerely held religious belief objecting to vaccination. There was a two part analysis and in every instance they looked also at whether or not there was an undue burden. So the plaintiffs were denied. Some of them were, many of them, the panel found that the objection to vaccination was not based on religion, but they also went to an undue burden analysis. If you look at the EEOC's guidelines for evaluating religious exemptions, the EEOC notes that an employer can make an inquiry into whether or not the objection to COVID-19 vaccination is religious in nature and is sincerely held. And the inquiry that the citywide panel made went exactly to those points and there was nothing improper about that. On this record, there's no information that the citywide panel did not adhere to the standards, the title seven standards and follow the EEOC guideline and implementing those. Did the citywide panel, if in deciding against a person and saying you don't, you're not exempt, because we don't think your religious beliefs are sincere, sincerely held, do they, do they give it an opinion on that or is it just denied? I'm sorry, the citywide panel did not find that anybody's religious beliefs were not sincerely held. They looked at whether or not the objection to vaccination was religious in nature, and whether or not they had consistently objected to such. But I'm sorry, I lost track of the second part of your question. No, I just wondered if they gave reasons, as opposed to just a flat denial. Yes, Your Honor, they did give reasons and those are the reasons that were communicated through counsel at plaintiff's request. The reasons did not come directly from the citywide panel to their clients. So, they followed the initial form denial informing the plaintiffs of the result. There was nothing in that form denial that indicated that that was the complete and total, you know, communication, and the panel, the panel statements of reasons followed by I believe three days, it might have been four days, which I then forwarded counsel to counsel, as had been agreed upon by the parties. So, in those reasons, which, as your honors noted were not before the district court on the preliminary injunction because they had not yet been issued. And those reasons. It is clear that the panel went through this examination, both to determine whether or not there would be an undue burden and whether or not the objection to vaccination was both based on religion and sincerely out. But what I mean, the. First of all, these things were not before Judge Caproni when she issued her room, right. That's correct, Your Honor. Okay, so these are kind of ad hoc right these are put together for purposes of this litigation, right, these are summaries, paired by a lawyer, about the rulings of the panel. Is that right, though, Your Honor, I, I don't know who the panel prepared the summaries. They came from the citywide panel, the citywide panels communications came to me, Your Honor, to forward to the plaintiffs. I don't know who on the citywide panel authors the statements of reasons. Okay, but several of these. I'm not sure we should be considering them because the district court didn't, but if we do several of them say that the employees sincerely held religious beliefs, which the panel does not question are not preventing the employee from vaccination, but it doesn't explain what is the basis for saying that's not that this is not what is motivating the refusal to be vaccinated. It seems pretty conclusive. And then for virtually every single one of these, there's a statement that and in any event, undue hardship. And so it sounds like nobody's ever going to win right there's always going to be an undue hardship. Well, Your Honor, two of the two of the original 15 plaintiffs have been granted accommodation so it is certainly not that nobody is going to win here. Why did they not pose an undue hardship, and the others did. I believe that it was not a classroom teacher and I think to the extent that a plaintiff is a classroom teacher and although remote learning is available for students now remote instruction is not permitted for teachers still and to the extent that teachers are in the classroom. It remains the Department of Education's position that it would that well, pursuant to the Commissioner's mandate that teachers cannot be in the classroom unvaccinated, and it would be an undue hardship on do we to accommodate the teachers who cannot be in the classroom. Pursuant to the vaccine requirement. Your Honors. The essence of the plaintiffs claim is that because the process before the city, because the process that the independent labor arbitrator created was likely this court found was likely unconstitutional, that the process before the city wide panel was, and that just does not pertain. The arbitration process is now defunct and the city wide panel process was undertaken by different decision makers, adhering to different standards, the plaintiffs, you know, on, on this record without more information about how those standards were applied, whether or not there was discretion and departing from the title seven or city and state human rights law standards. There's a judge Caponi correctly exercised your discretion to determine that the plaintiffs had not borne their, their burden at requesting the extraordinary relief of an injunction and joining the government action and denied the injunction. This court should affirm the denial, and it should lift the stay of the deadline that is presently in place. If we were to affirm the denial but not lift the stay pending a hearing on them on the, on the, you know, full trial, this is a preliminary injunction. Would you agree to an expedited appeal. Your Honor, we would not object to an expedited appeal. Although the plaintiffs, you know, are certainly suffering while on leave without pay. They have not been pressing this litigation forward they didn't press the litigation in district court they came back to this court on an undeveloped record and a premature request for relief, but certainly we would not object to moving this process forward in an appropriate fashion. Well, one way to move the process there are two ways to move the process forward. One is to remain for more complete record of the district court is this, this implause in that regard. And the other is to just kick it over to a panel with full briefing. And, and in short order, but, you know, I guess, as far as you're concerned, you're not, you're not opposing any expedited approach on that. That is correct, Your Honor. Thank you. Thank you very much. A minute of rebuttal from his black. Thank you, Your Honor. If I heard correctly, Miss Paulson began her comments with the following quote, the city wide panel properly exercised its discretion, and quote. That's the problem. The city wide panel had discretion. That's the kind of discretionary individualized exemptions proscribed by Smith. This court in We the Patriots, and in its own earlier ruling several months ago. There was nothing further for appellants to submit. We got blanket denials within one hour of each other to the best of our information. No explanations given. It seemed like a rubber stamp, we went right back and said, this is unconstitutional. This is nothing more than a rubber stamp. But can I stop you there, I mean, it seemed like a rubber stamp is not going to cut it right, don't you have to show that they are doing what they did before you have to show that they're not doing what they are saying they're doing to get. Your Honor, they did everything intentionally behind closed doors. We had no access to anything we didn't sit in on the proceedings, we were not given any information, the burden that would seem is on them. Ordered them to give a fresh consideration in a in a more constitutional process following three separate bodies of law, and they come back with denied denied denied denied denied undue hardship. And that's exactly what we expressed concerns over before the merits panel last time around. And that's exactly what happened. The other thing, Judge Solomon, I would like to respond to the concerns that you particularly had raised your honor with respect to title seven standards versus First Amendment standards, it is. The city is trying to hide behind the Second Circuit's prior order and saying, well, we just did what you told us we complied with title seven, but title seven coexist with the Constitution, there is no case of which we are aware that says that title seven takes you out of the First Amendment. No, look, look, clearly not the Second Circuit said in providing religious accommodations a government employer must abide by the First Amendment. That's a quote that comes right after. That's the title seven stand. So, it is a little confusing, however, that the panel then endorses the motions panel. Our order that the city adhere to the standards established by title seven in fashioning a an exemption program. Well, perhaps your honor, the standards required by till seven refers to the analysis of whether the conduct is religious in nature, whether it is sincerely held and the courts have indeed said that those standards or those requirements are the same under First Amendment and title seven analysis, but you are nonetheless held to a strict scrutiny standard. If you are a state actor. All right, thank you. Thank you from his Gibson for one minute or so. Thank you. Um, I think I just want to really leave the court with a question. If we make precedent today, it's very unusual to find a written policy that requires discrimination right in the written policy to see city actors openly advocating for discrimination against people whose beliefs don't comply with the Pope's beliefs, saying that anybody. Wait, wait, wait, but that that I think the city has disavowed, they're saying that's the old standard. Okay, the new standard so what's your basis what well let me finish. What is your basis for saying that's still the standard, though, it would be outrageous to see that kind of discrimination occur openly, and then to say you can fix it. Look, please, it's not that hard just answer my question. What is your basis for saying that these discriminations are being made based on what the Pope has said, as opposed to what the individual exemption seeker is saying, Your Honor, I just am setting the stage that when you've already had that open discrimination, setting a precedent that somebody can whitewash that by simply rubber stamping it with a fresh look by their own attorneys and say, we think it's that they should have been accommodate each person's religious beliefs, even under lessons and undue hardship. Right. Well, it wasn't just undue hardship. Well, if you know the reasons submitted by counsel, there's a finding of undue hardship, that, that there's no possible accommodation. If they want to be classroom teachers, then, then it seems to me that that's the end of it right. Well, Your Honor, they have to prove that that's true. They have to show that that's actually true. And then under the First Amendment, they have to prove that that's true. So that they either under other standard, though, they still have to establish and then of course, there's the human rights law standards that they also have to give credible evidence why it's an undue hardship. And I'll push back on saying it's only classroom teachers. They've granted under the unconstitutional standards that they had before. That's who all of these employees were suspended under those standards, by the way, they weren't suspended under this fresh look, this fresh look just rubber stamp the suspensions that already occurred under the unconstitutional process. But in any event, 165 people they admit were granted and not all of those people were administrators. Some of them were classroom teachers. If they can accept 165 people without an undue hardship, why can't they accept these 15? They have to articulate this. They have to explain it and show that they've tried and, and frankly, they have to show that it's the least restrictive method. And I think at that point, we really have to face what's happening here. Excluding that unvaccinated teachers has had no impact on the level of infected staff. Omicron variant infects vaccinated and unvaccinated alike. We have in the record, we submitted substantial evidence that vaccination is not the least restrictive method of safeguarding the population. Now, you're moving to the vaccine mandate as opposed to the process, right? Well, when you look at what's least restrictive, you have to start moving to whether it's necessary to force these religious people to violate their faith by getting vaccinated, or whether there's another accommodation that can serve the school. And what we're looking at is, look, it's not even rational. We've got over a thousand teachers infected right now. Fully vaccinated teachers are infected according to the DOE's own data. We know that vaccination can't stop infection and transmission. And so this is not necessary. There's less restrictive methods. You could have people test. You could have them do the rapid home test. You could have them do symptom checks. There's a variety. But if you're going back to the vaccine, are you seeking a preliminary injunction on the vaccine mandate as well? I'm seeking a preliminary injunction for excluding any teachers or administrators or staff with religious, sincere religious objections from the mandate. As long as we've had until very recently, in most states, there's a religious exemption to vaccine mandates. It's not unusual to exempt a certain amount of people. This is less than 5% of the staff that has religious objections. And there really hasn't been any showing made that it's necessary to exclude them from the classroom, or if so, that there's not a lesser accommodation that could be made. But you lost that argument in November, right? I don't believe we did, Your Honor. What we lost was saying whether the mandate itself, for whatever reason, this court has determined that the way it was implemented is not going to affect whether it's generally applicable or neutral, the mandate itself. But the mandate itself doesn't require that unvaccinated people be excluded if they're reasonably accommodated. It says right on its face that nothing in this mandate shall preclude reasonable accommodations required under law, meaning that if you have a religious or medical exemption, you should be able to be accommodated, and nothing in the mandate precludes that. So we're really just looking at the religious exemption policy. You've gone beyond that. But anyway, you've gone beyond the one-minute also. So we will reserve decision. I'll just remind everybody, this is a motion for an injunction pending appeal, so we won't be setting the precedent on this. We will be deciding whether there's a likelihood of success and a replacement. Okay, thank you very much. We'll now move to our